IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TZVETAN VASSILEV,           :
                            :
                            :
       Plaintiff,           :
                            :
v.                          :   CIVIL ACTION NO.
                            :   1:14-CV-0312-LMM
                            :
THE CITY OF JOHNS CREEK,    :
GEORGIA and OFFICER DIMITRI O.  :
CALDWELL,                   :
                            :
       Defendants.          :

## ORDER

This case comes before the Court on Plaintiff's Motion to Amend

Complaint [36] and Defendants' Motion for Summary Judgment [29]. For the

reasons explained in this Order, Plaintiff's Motion to Amend [36] is **GRANTED**

and Defendants' Motion for Summary Judgment [29] is **GRANTED IN PART**

and **DENIED IN PART**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

In the early morning hours of April 7, 2013, Plaintiff, Dr. Tzvetan Vassilev,

and three other occupants, Todor Dimitrov, Joasia Holotka, and Yehuda Smolar,

were driving a few blocks home from a local bar in Plaintiff's car. Dkt. No. [40] at

---

[1] The following facts are construed in the light most favorable to the non-movant,
Plaintiff, consistent with the summary judgment legal standard. See *infra*.

5. Mr. Dimitrov drove while Plaintiff sat in the backseat directly behind him. Dkt. No. [40-1] ¶¶ 9, 25.

Defendant Caldwell, a police officer working for the City of Johns Creek, pulled Plaintiff's car over at 2:33 a.m. Id. at ¶¶ 2-3. Caldwell saw four occupants in the car and began speaking with Dimitrov. Id. at ¶¶ 8-9. Specifically, he asked Dimitrov if he had been drinking that night. Id. at ¶ 10. Dimitrov replied, "not really." Id. Based on this ambiguous answer, Caldwell decided to conduct a DUI investigation. Id. at ¶ 11.

Caldwell walked back toward his police vehicle and called Officer Kent Coe for assistance. Id. at ¶ 12. Coe arrived at the scene after several minutes and took control of the investigation. Id. at ¶ 13.

When Coe approached the car, Dimitrov was smoking a cigarette. Dkt. No. [40-2] ¶ 6. Coe asked whether Dimitrov had been drinking, to which Dimitrov answered "no." Dkt. No. [29-5] Ex. A: DVR 031 at 2:50:44. Coe then asked who had been drinking as he could smell alcohol coming from the car. Id. at 2:50:50. Each other occupant admitted to having drunk alcohol that night. Dkt. No. [40-1] ¶ 15.

At approximately 2:50:51 on Caldwell's dashboard cam, the female occupant, Ms. Holotka, began speaking with Coe. Dkt. No. [29-5] Ex. A: DVR 031 at 2:50:51 to 2:51:42. She explained how the passengers had just stopped to buy cigarettes. Id. While her voice is clear on the recording, at around 2:51:49 the microphone picked up a male voice whose words are unclear. Id. at 2:51:49.

At 2:51:55, Coe asked Dimitrov to step out of the car, but Dimitrov did not immediately do so. Dkt. No. [40-1] ¶ 16. The occupants of the car began to argue with Coe as to whether the driver had to exit the car. Id. at ¶ 17. Coe explained that he needed to remove Dimitrov to separate him from the smell of alcohol coming from the vehicle. Id. at ¶ 18.

During this entire interaction, the dashboard cam shows Defendant Caldwell standing on the passenger side of the car. Dkt. No. [29-5] Ex. A: DVR 031 at 2:50:32 to 2:55:21. At approximately 2:53:50 on the dashboard cam, as Plaintiff opened the rear door to throw out a cigarette, Coe said, "stay right there . . . you're not going to throw that cigarette out here on the ground." Dkt. No. [40-1] ¶ 24. A few seconds later, Coe opened the driver's door and Dimitrov stepped out. Id. at ¶¶ 27, 29.

Once Dimitrov was out of the car, Coe administered a field sobriety test. Id. at ¶ 31. He directed Dimitrov to blow into the portable alcosensor which read 0.141 blood alcohol level. Id. at ¶ 33. Dimitrov was placed under arrest and charged with DUI and driving too fast for conditions. Id. at ¶ 35.

During Coe's field sobriety test, Defendant Caldwell remained standing at the passenger side of the car for nearly five full minutes. Dkt. No. [29-5] Ex. A: DVR 031 at 3:03:09-3:08:15. During those five minutes, the audio of the dashboard cam only recorded the conversation between Coe and Dimitrov outside the car, as Coe was the only one wearing a microphone. See id. No

3

conversation between the remaining occupants and Defendant Caldwell can be heard. See id.

Sometime within those five minutes, Plaintiff decided to smoke a cigarette.[2] Dkt. No. [40] at 7. Caldwell told Plaintiff that he could not smoke at that moment to which Plaintiff replied that it was his car and he could smoke if he wanted to. Dkt. No. [40-3] at 30. The dashboard cam shows Caldwell walk over to Coe and another officer to discuss Plaintiff's disobedience. Dkt. No. [29-5] Ex. A: DVR 031 at 3:08:31. On the recording, Caldwell says, "What do you think about the guy in the backseat on the driver's side" to which Coe responds, "What about him?" Id. However, the microphone shortly cuts out such that it only recorded Caldwell recounting the conversation, not how the other officers react. Id.

After this conversation, Caldwell walked back to the car and placed Plaintiff under arrest for obstruction. Dkt. No. [40-1] ¶ 37. After he brought Plaintiff to the squad car, his voice began recording on the microphone. Dkt. No. [29-5] Ex. A: DVR 031 at 3:11:03. He says:

> **Caldwell**: Can you hear me? . . . Do you speak good English?
> **Vassilev**: Yes.
> **Caldwell**: I'm going to ask you one more time, okay? And depending on how you act right now will depend on whether you go to jail tonight or go back home, okay?
> **Vassilev**: Why did you arrest me?

---

[2] It is hotly disputed as to whether Plaintiff smoked a cigarette while the driver was still in the vehicle or once the driver had exited, however, because the evidence is inconclusive, the Court will construe the facts in a light most favorable to Plaintiff.

> **Caldwell**: I told you not to light your cigarette. You told me "it's my car" and lit up anyway, didn't you? Right?
>
> **Vassilev**: I don't remember?
>
> **Caldwell**: You don't remember? You remember it just fine. I'll tell you what: so does this box here. The microphone recorded the whole conversation and it remembers just fine, too. So does that video camera on the dashboard. It remembers just fine, too . . . A minute ago you tried to play the tough guy role in the back seat. Now you're in the back seat of my car and you don't remember?
>
> **Vassilev**: What do you want me to say?

Dkt. No. [29-5] Ex. A: DVR 031 at 3:11:03 to 3:13:35.

After this exchange, Caldwell chose to issue Plaintiff a citation for disorderly conduct rather than charging him with obstruction. Dkt. No. [40-1] ¶ 40. In particular, Caldwell said, "I don't want to take you to jail. Ok? I'd rather write you a ticket and let you go home—come to court later on." Dkt. No. [29-5] Ex. A: DVR 031 at 3:14:05-3:14:11. Caldwell then allowed Plaintiff to leave the scene after detaining him for approximately 15 minutes. Id.

Thereafter, Plaintiff hired attorney Lisa Wells to defend him on his disorderly conduct case arising from this incident. Id. at ¶ 48. Plaintiff attended his court date on July 30, 2013, at Johns Creek Municipal Court with his attorney. Id. at ¶ 49. His attorney spoke with the prosecutor and indicated that the prosecutor wanted Plaintiff to write an apology letter to Caldwell. Id. Plaintiff did so and the charges were *nolle prosed*. Id.

Plaintiff brought this action against Defendants Caldwell and the City of Johns Creek on February 4, 2014, bringing claims under 42 U.S.C. § 1983 for violations of his First and Fourth Amendment rights, as well as state law claims

for false imprisonment pursuant to O.C.G.A. § 51-7-20, punitive damages, and respondeat superior. Dkt. No. [1]. Defendants filed a timely answer on June 30, 2014. Dkt. No. [6].

Thereafter, on July 29, 2014, the parties filed a joint preliminary report and discovery plan. Dkt. No. [9]. The parties indicated therein that they did not anticipate any amendments to the pleadings. Id. at 4. Additionally, the discovery plan provided that "[a]mendments to the pleadings submitted later than thirty days after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law." Id.

Discovery was conducted and Defendants filed a motion for summary judgment on March 13, 2015, as to all claims. Dkt. No. [29]. Twenty-one days later, on April 3, 2015, Plaintiff filed his motion to amend the complaint presently before the Court. Dkt. No. [36]. According to the Joint Preliminary Report and Discovery Plan, the deadline to file any motions to amend the pleadings was August 28, 2014.

In his Motion, Plaintiff asks the Court for leave to delete paragraph 29 of the Complaint dealing with malicious prosecution and delete the entire negligence claim. Dkt. No. [36-1] at 2. Defendants object to Plaintiff's Motion to Amend and ask the Court to dismiss the claims with prejudice. The Court will analyze the Motion to Amend first, as it influences which claims will be discussed in the summary judgment analysis.

6

## II.   __MOTION TO AMEND__

### a.  Legal Standard

Federal Rule of Civil Procedure 15(a)(1) provides that a party may amend its pleading once as a matter of course within either twenty-one days after serving it, or twenty-one days after services of a required responsive pleading or motion filed under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). After this period has passed, a party may amend its pleading only with the opposing party's written consent or the Court's leave which the Court "should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). A court should not grant a motion to amend under Rule 15 if the moving party engaged in "undue delay, bad faith, [or] a dilatory motive." Laurie v. Alabama Court of Criminal Appeals, 256 F.3d 1266, 1274 (11th Cir. 2001) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

However, when a motion to amend is filed after the deadline set out in the scheduling order, courts must look to Rule 16(b) before considering Rule (15). Johnson v. Mammoth Rec., Inc., 975 F.2d 604, 607 (9th Cir. 1992). District courts are required to "enter a scheduling order that limits the time to . . . join other parties and to amend the pleadings . . ." Fed. R. Civ. P 16(b). Such orders "control the subsequent course of the action unless modified by a subsequent order" and may be modified only "upon a showing of good cause." Fed. R. Civ. P. 16(b). Where the plaintiff seeks to delete claims from his complaint, however, the court can relax its good cause inquiry. See McCoy v. Erie Ins. Co., 204 F.R.D. 80,

82 (S.D. W. Va. 2001) ("[t]he good cause requirement . . . is intended to prevent a plaintiff from decimating a Scheduling Order with late attempts to complicate or change the nature of the case. That salutary purpose is not offended here. Deletion of the claims would greatly simplify the case . . . permitting it to be resolver *earlier* than contemplated by the Scheduling Order"); Sall v. Bounassissi, 2011 WL 2791254, at *4 (D. Md. July 13, 2011) (citing McCoy to say "the deletion of claims is not as problematic under Rule 16(b)").

### b. Discussion

As discussed above, Plaintiff wishes to delete two claims from his Complaint. According to Plaintiff, the malicious prosecution claim was added to the Complaint as a scrivener's error. He does not wish to assert malicious prosecution and the Court finds no reason why the error should be kept in the Complaint. The only prejudice Defendants can be said to suffer is the possibility that they must face this claim again at some later date. However, that prospect is generally not sufficient to preclude an amendment to drop a claim. [3] Fisher v. Puerto Rico Marine Management, Inc., 940 F.2d 1502, 1502-03 (11th Cir. 1991).

Furthermore, while Defendants contend that they spent time and money briefing the issue of malicious prosecution, much of their summary judgment brief treats false arrest and malicious prosecution as a single cause of action, applying the law to both claims. See Dkt. No. [29-1] at 13 ("the negotiated quid

---

[3] Additionally, the Court would be very reluctant to allow Plaintiff to amend his Complaint a second time to add the claim back in given the circumstances and delay.

pro quo . . . bars all of plaintiff's claims arising from his arrest and prosecution"); id. at 14 ("[t]hus the false arrest, false imprisonment and malicious prosecution claims asserted under federal and state law fail as a matter of law"). For those reasons the Court finds there is no prejudice to Defendants in granting the motion to amend as to the malicious prosecution claim.

Plaintiff also wishes to delete his negligence claim. Plaintiff admits that this claim was not added as a scrivener's error but should not be considered on its own as it is subsumed within his state law false imprisonment claim. Ridgeview Institute, Inc. v. Hadley, 481 S.E.2d 531, 533 (Ga. Ct. App. 1997) ("[f]alse imprisonment is an intentional tort and not a tort of negligence") (citing Stewart v. Williams, 255 S.E.2d 699, 700 (Ga. 1979)). Again, the Court finds no reason why deleting this claim would prejudice Defendants. In fact, Defendants seem to agree with Plaintiff that "this vague negligence claim is essentially derivative of plaintiff's other claims." Dkt. No. [29-1] at 20. They spend virtually no time discussing the law or citing to cases that indicate it is derivative. For that reason, the Court finds no prejudice towards Defendants in granting the motion to amend as to the negligence claim.

### III.   MOTION FOR SUMMARY JUDGMENT

#### a.  Legal Standard

Federal Rule of Civil Procedure provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden to show the Court, by reference to material in the record, that there is no genuine dispute as to any material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp., 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Johnson, 74 F.3d at 1090.

Once the moving party has adequately supporting its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Elc. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. Id. (citations omitted). All reasonable

doubts, however, are resolved in the favor of the non-movant. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993).

### b. Discussion

#### i. Plaintiff's Fourth Amendment Claim

Plaintiff's first claim, directed only at Defendant Caldwell, alleges Fourth Amendment violations for false arrest. Dkt. No. [1] at 6. In particular, Plaintiff alleges that Caldwell detained Plaintiff "without arguable probable cause[,] constitut[ing] an unreasonable seizure of [his] person in violation of the Fourth Amendment of the United States." <u>Id</u>. at ¶ 22.  In turn, Defendants assert two defenses. First, Defendants claim the action is barred because Plaintiff cannot show that the criminal proceedings terminated in his favor. Dkt. No. [29-1] at 12. Second, Defendants claim Caldwell is entitled to qualified immunity such that he is not liable for any constitutional violation. <u>Id</u>. at 15.

Therefore, the Court must first decide if favorable termination applies to Plaintiff's Fourth Amendment claim. If it does not, the Court will then decide if Caldwell has qualified immunity.

#### 1. Favorable Termination

Defendants allege that favorable termination of Plaintiff's criminal proceeding is an essential element of his § 1983 false arrest claim. <u>Id</u>. at 12. They further allege that Plaintiff's agreement to write an apology letter to Caldwell does not constitute a favorable termination, causing his claim to fail as a matter of law. <u>Id</u>.

However, Defendants' argument centers on the idea that Plaintiff was also bringing a malicious prosecution claim. See id. But, as discussed *supra*, Plaintiff has amended his Complaint to remove that claim. And while favorable termination is an element of malicious prosecution, it is not an element of false arrest. Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) ("Favorable termination is not an element of [the false arrest] tort"). See Wade v. Zimbrick, 2010 WL 2545934, at *2 (N.D. Ga. June 22, 2010) ("The elements of common law false imprisonment are an intent to confine, an act resulting in confinement, and the plaintiff's awareness of the confinement . . . Finally, the elements of malicious prosecution under § 1983 consist of: (1) a judicial proceeding commenced against the plaintiff by the defendant(s); (2) malice and lack of probable cause for the judicial proceeding; (3) favorable termination; and (4) damages suffered as a result").

The better inquiry is not whether the criminal proceedings terminated in Plaintiff's favor, but whether, under Heck v. Humphrey, 512 U.S. 477 (1994), Plaintiff is estopped from bringing his claims. In Heck, the Supreme Court held that a plaintiff cannot bring a § 1983 action that would imply the invalidity of the plaintiff's criminal conviction, "but if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed . . ." Heck, 512 U.S. at 487.

The Court finds that the <u>Heck</u> rule is not at issue here. Plaintiff was not convicted and therefore he is not collaterally estopped from litigating the elements of the offense charged. <u>See</u> <u>McClish v. Nugent</u>, 483 F.3d 1231, 1251-52 (11th Cir. 2007) ("The issue is not, as the district court saw it, whether Holmberg's participation in [a pretrial diversion program] amounted to a favorable termination on the merits. Instead, the question is an antecedent one—whether <u>Heck</u> applies at all since Homberg was never convicted of any crime.").

### 2. Qualified Immunity

Defendants next argue that Caldwell is entitled to qualified immunity. Qualified immunity "is intended to allow government officials to carry out their discretionary duties without fear of personal liability," "protecting all but the plainly incompetent or one who is knowingly violating the federal law." It offers complete protection for those officials sued in their individual capacities as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Thomas v. Roberts</u>, 261 F.3d 1160, 1170 (11th Cir. 2001).

An officer asserting a qualified immunity defense must first show that he was "acting within his discretionary authority." <u>Skop v. City of Atlanta</u>, 484 F.3d 1130, 1136 (11th Cir. 2007). If the officer was acting within his discretionary authority, the burden shifts to the plaintiff to show that the officer cannot receive qualified immunity. <u>Id</u>. at 1137. Defeating the qualified immunity defense involves two steps. <u>Id</u>. First, the plaintiff must show that the official's behavior

violated a statutory or constitutional right. Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Second, the plaintiff must show that the right was clearly established. Id.

### A. Did Caldwell Act within His Discretionary Authority?

As to the first question, the Court finds that Caldwell was acting within his discretionary authority. See Harber Int'l v. James, 157 F.3d 1271, 1282 (11th Cir. 1998). Actions are within the scope of an official's discretionary authority if the actions were "(1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." Id. To answer this question, the Court must ask if Caldwell's duties included arresting individuals for obstruction of justice. See id. (holding that the courts do not ask if it was proper for the official to have done what he did given the specific circumstances, instead, they ask if the physical act is something that is within the official's duties). In this case, the Court finds that it was within Caldwell's duties to make such an arrest.

Because Caldwell has shown that he acted within the scope of his discretionary authority, the burden shifts to Plaintiff. Skop, 484 F.3d at 1137. Plaintiff must show (1) Caldwell's behavior violated a statutory or constitutional right, and (2) that violation was clearly established. Id.

### B. Did Caldwell Violate Plaintiff's Constitutional Rights?

Plaintiff claims Caldwell violated his Fourth Amendment right against unreasonable seizure. In Fourth Amendment terminology, "an arrest is a seizure

14

of the person . . . and the reasonableness of an arrest is, in turn, determined by the presence or absence of probable cause." Id. Defendants claim Caldwell did not violate Plaintiff's Fourth Amendment rights because he had probable cause to arrest him.

Probable cause is defined as "facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." Grider v. City of Auburn, Ala., 618 F.3d 1240, 1257 (11th Cir. 2010) (quoting Gerstein v. Pugh, 420 U.S. 103, 111 (1975)). A defendant does not violate an individual's Fourth Amendment rights if he had probable cause to believe the individual committed even a very minor criminal offense in his presence. Lee v. Ferraro, 284 F.3d 1188, 1194-95 (11th Cir. 2002).

However, even if a defendant lacked probable cause, the Court does not automatically deny qualified immunity. Skop, 383 F.3d at 1137 ("We do not automatically hold an officer liable for making an arrest that, when seen with the benefit of hindsight, turns out not to have been supported by probable cause"). Instead, the Court applies the standard of "arguable probable cause." Id.

Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the defendants could have believed that probable cause existed to arrest plaintiff." Id. Whether an officer has arguable probable cause depends on the elements of the alleged crime and the operative fact pattern. Id.

15

Therefore, to determine if Caldwell has qualified immunity, the Court must look to the elements of the crime for which Plaintiff was detained.[4] Id. Georgia's obstruction statute states, "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." O.C.G.A. § 16-10-24(a) (2014). According to Georgia case law, obstruction involves intent to interfere rather than the failure to immediately obey an officer's command. See Stryker v. State, 677 S.E.2d 680, 682-83 (Ga. Ct. App. 2009) (conviction for obstruction upheld when the defendant intended to impede officers' investigation by allowing his car, the source of the investigation, to be driven off); Coley v. State, 344 S.E.2d 490, 491 (Ga. Ct. App. 1986) (reversing an obstruction conviction because the defendant "did nothing more than fail to respond immediately" to officer's orders).

The parties agree that, whether Caldwell had arguable probable cause, depends on whether the driver was in the car when Caldwell told Plaintiff not to smoke. If the driver was in the car, according to Defendants, the officers would be unable to determine the source of the alcohol smell in the vehicle. If the driver had left the car, as Plaintiff contends, then there would be no reason for Plaintiff not to smoke, as the investigation would have moved outside.

---

[4] Because Plaintiff was originally detained for misdemeanor obstruction, the Court will analyze the elements of obstruction rather than the elements of disorderly conduct, for which Plaintiff was eventually cited.

According to Plaintiff's version of events, in which the driver is no longer in the car,[5] the Court concludes that a reasonable officer could not have thought he had arguable probable cause to arrest Plaintiff for obstruction as he would not be interfering with any investigation. Though Defendants claim the dashboard cam gives irrefutable evidence that the driver was in the car when Caldwell told Plaintiff to throw out his cigarette, that fact is not dispositive of the issue. For instance, there is no discernible audio recording of Caldwell telling Plaintiff to throw out his cigarette and the only evidence Defendants point to is the fact that Plaintiff threw out a cigarette while the driver was still in the car. According to Defendants, that single act shows that Caldwell must have told him not to smoke during that conversation.

However, the Court finds this reasoning perplexing. First, according to this logic, Plaintiff could only have been smoking one cigarette during the entire incident, or, there could only have been one cigarette in the car. If that were the case, then the cigarette he tried to throw out would, irrefutably, be the same cigarette that Caldwell told him not to smoke. If Defendants had proof that Plaintiff only smoked one cigarette, or there was only one cigarette in the car during the incident, then they would be correct. However, they offer no such

---

[5] For summary judgment, the Court must look at the facts in a light most favorable to Plaintiff as the non-moving party. Johnson, 74 F.3d at 1090. In this case, Defendants try to argue that their evidence, primarily the dashboard cam, irrefutably proves their theory of the case. However, for reasons discussed *infra*, the Court finds that the video does not undoubtedly prove their theory and, in fact, leaves important questions unanswered.

evidence. In fact, it is undisputed that the driver was smoking a cigarette during the stop, such that it could have been his cigarette Plaintiff attempted to throw out.

Additionally, if Plaintiff did refuse Caldwell's command, as he admits he did, why was he then trying to throw out the cigarette? It is odd that the Defendants would rely on Plaintiff actually complying with Caldwell's instructions to show that he was obstructing the investigation. And if Coe had truly overheard the conversation between Plaintiff and Caldwell, as he claims in his deposition testimony, why would he then not allow Plaintiff to throw out the cigarette? And again, it is undisputed that the driver, the subject of the investigation, was smoking when Coe came to his window. If both the driver and Plaintiff were smoking, as Defendants believe, why was Plaintiff the only one told not to smoke? All of these inconsistencies create questions of material that the jury must decide. For those reasons, the Court, following Plaintiff's theory of the case, finds that there are questions of fact that preclude a finding that Caldwell had arguable probable cause.

### C. Was the Violation Clearly Established?

The second prong asks whether the violation for which the officer is accused was clearly established. Skop, 485 F.3d at 1143. The important question is "whether the state of law . . . gave [the officer] *fair warning* that [his] alleged treatment was unconstitutional." Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002). The Eleventh Circuit has already concluded that "it is *clearly*

*established* that an arrest without probable cause violates the Fourth Amendment." <u>Von Stein v. Bresher</u>, 904 F.3d 572, 578 (11th Cir. 1990) (emphasis added). For that reason, the Court finds that, given the set of facts, Plaintiff has met his burden to overcome the qualified immunity defense.

Because the Court finds there are numerous issues of material fact, the Court declines to grant summary judgment as to Plaintiff's Fourth Amendment claim for false arrest.

### ii.  Plaintiff's First Amendment Claim

Plaintiff's second claim, directed only at Defendant Caldwell, alleges First Amendment violations for retaliatory arrest and prosecution. Dkt. No. [1] ¶ 25. Plaintiff alleges "that the arrest and prosecution were initiated in retaliation for constitutionally protected speech that did not provide the basis for a lawful arrest under the Fourth Amendment." <u>Id</u>. However, before analyzing the elements of retaliatory arrest and prosecution, the Court must first decide if he has qualified immunity.

### 1.  Qualified Immunity

For Plaintiff's First Amendment claim, Defendants only argue that qualified immunity exists because Caldwell had probable cause to arrest Plaintiff. <u>See</u> Dkt. No. [44-1] at 2. For reasons stated *supra*, taking the facts in a light most favorable to Plaintiff, the Court already found Caldwell lacked even arguable probable cause. However, under qualified immunity, Plaintiff still bears the

burden to show his First Amendment rights were violated and that the violation was clearly established.[6]

### A. Were Plaintiff's First Amendment Rights Violated?

To prove that his First Amendment rights were violated, Plaintiff must prove that he was arrested in retaliation for his protected speech. Therefore, Plaintiff must show, first, that his speech was protected and, second, that he was arrested because of it. Hartman v. Moor, 547 U.S. 250, 261 (2006).

Plaintiff says his "verbal sparring" with Caldwell amounts to protected speech. Dkt. No. [40] at 22. In particular, Plaintiff claims his "opinion" about whether he could smoke in his car was an exercise in free speech. Id. at 17.

It has long been established that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." City of Houston, Tex. v. Hill, 482 U.S. 451, 452 (1987). Nonetheless, such speech cannot amount to "fighting words" or words that "tend to incite an immediate breach of the peace." Id. at 451. In this situation, however, the Court finds that Plaintiff's words, simply stating that he was allowed to smoke because it was his car, do not amount to fighting words or tend to incite an immediate breach of the peace. For that reason, the Court finds that his speech was protected.

---

[6] This burden does not apply until Defendants show Caldwell was acting within his discretionary authority; however, the Court has already concluded Defendant was acting within his discretionary authority. Skop, 484 F.3d at 1136.

Next, Plaintiff must show that the protected speech was the "but-for" cause of the arrest. Hartman, 547 U.S. at 261. That is, Plaintiff must prove that the arresting officer would not have made the arrest if the plaintiff had not engaged in his protected speech. Id.

To establish but-for causation, Plaintiff must show Caldwell lacked probable cause. Id. ("Demonstrating that there was no probable cause for the underlying criminal charge will tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution, while establishing the existence of probable cause will suggest that prosecution would have occurred even without a retaliatory motive."). Id. Because Plaintiff already demonstrated a question of fact as to Caldwell's lack of probable cause, he has created a strong inference that Caldwell arrested Plaintiff out of retaliation in violation of his First Amendment Right.

## B. Was the Violation Clearly Established?

Plaintiff must now show that the violation of his First Amendment rights was clearly established. To particularize the situation, the Court asks whether arresting an individual without probable cause in retaliation for his protected speech is a clearly established violation.

As stated *supra*, the Court finds that it has long been clearly established that an officer cannot arrest a citizen for constitutionally protected speech such as verbal sparring. City of Houston, Tex., 482 U.S. at 452; Skop, 485 F.3d at 1139. And, because First Amendment principles are such an integral part of American

legal jurisprudence, it should come as no surprise to any reasonable officer that he violates a citizen's rights when he arrests the citizen, without probable cause, in retaliation for protected speech. See U.S. v. Lanier, 520 U.S. 259, 270 (1997) ("The easiest cases don't even arise. There has never been . . . a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages").

Because Plaintiff shows that there is a question of fact as to whether Caldwell arrested him *without* probable cause in retaliation for his protected speech, the issue of qualified immunity must go to the jury. C.f. Reichle v. Howards, 132 S.Ct. 2088, 2094 (2012) (holding that a retaliatory arrest *supported* by probable cause is not a clearly established violation for purposes of qualified immunity). See generally McBeth v. Himes, 598 F.3d 708, 719 (10th Cir. 2010) (requiring the *absence* of probable cause in the context of a claim alleging that government officials suspended a business license in retaliation for the exercise of First Amendment rights).

### iii.  Plaintiff's State Law False Imprisonment Claim

Plaintiff's third claim, directed only at Caldwell, alleges state law false imprisonment claims. Dkt. No. [1]. The Georgia false imprisonment statute defines the tort as "the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." O.C.G.A. § 51-7-20 (2014).

22

Plaintiff contends Caldwell acted unlawfully when, with actual malice, he knowingly arrested and filed charges against Plaintiff without probable cause and with intent to injure or do wrong. Dkt. No. [1] at 8. Defendants, on the other hand, argue that Caldwell is entitled to discretionary immunity. Id. at 20.

In particular, Defendants argue Caldwell is entitled to discretionary immunity under the Georgia Constitution. The relevant provision reads:

> All officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages . . . if they act with *actual malice* or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers . . . shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or non performance of their official functions.

Ga. Const. art. I, § 2, para. 9 (emphasis added).

Because the Court has already concluded, *supra*, that Caldwell acted within his discretionary authority, the only remaining question is whether he acted with actual malice. Ga. Const. art. I, § 2, para. 9. The Georgia Court of Appeals described actual malice thusly:

> Actual malice requires a deliberate intention to do wrong and express malice or malice in fact. Actual malice does not included implied malice or the reckless disregard for the rights and safety of others. A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs. Likewise, [t]he phrase 'actual intent to cause injury' has been defined in a tort context to mean an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive.

Selvy v. Morrison, 665 S.E.2d 401, 404-05 (Ga. Ct. App. 2008). This standard is higher than qualified immunity as qualified immunity only asks if the defendant should have known he was violating rights rather than if the defendant *intended* to cause harm. See Thomas, 261 F.3d at 1170.

According to Defendants, Caldwell is entitled to discretionary immunity because there is no evidence he acted with actual malice. Plaintiff makes two counterarguments. First, the lack of probable cause is enough for a jury to infer he had actual malice, and second, the post-arrest "bullying session" is enough to show actual malice. Dkt. No. [40] at 27.

For support for his first argument, Plaintiff cites to a Georgia Court of Appeals case. Bateast v. DeKalb Cty., 572 S.E.2d 756, 757-58 (Ga. Ct. App. 2002) (holding an inference of actual malice existed when the defendant arrested the plaintiff for providing false identification when he knew she had not). However, in that case, the defendants *knew* they lacked probable cause such that an inference for actual malice could be made by the jury. Id. In this case, however, Plaintiff has not provided evidence that Caldwell knew he lacked probable cause, only that he *should* have known he lacked probable cause.

Plaintiff's second argument contends that the bully-session after the arrest provided direct proof of actual malice. In that conversation, Caldwell seemed to mockingly call Plaintiff a "tough guy" and implied that Plaintiff, an immigrant from Bulgaria, cannot "speak good [sic] English." Dkt. No. [29-5] Ex. A: DVR 031 at 3:11:03 to 3:13:35.

However, according to the Georgia case law, this evidence is insufficient to prove actual malice. See Taylor v. Waldo, 709 S.E.2d 278, 279 (Ga. Ct. App. 2011). For instance, in Taylor, a plaintiff filed suit after being arrested for obstruction without probable cause. Id. The plaintiff was arrested because he briefly argued with an officer about whether he had to remove his identification from its plastic slip. Id. at 109. When the plaintiff did not immediately comply, the defendant threw him down a porch stoop before handcuffing him. Id. Once the plaintiff was in custody, the defendant and another officer began laughing about how the plaintiff fought the law and "the law won." Id. The trial court found that, even though the defendant did not have probable cause, the evidence did not show he was motivated by malice. Id. at 111. It merely showed that he was motivated by a mistaken belief that the plaintiff's failure to immediately comply amounted to obstruction. Id.

In this case, the only evidence Plaintiff uses to show malice is the "bully session." However, if pushing a citizen down a porch stoop is not enough under Georgia law to amount to malice, this interaction is insufficient to demonstrate that Caldwell acted with intent to harm. See id.

Looking at the entire recording, it is clear that Caldwell was calmly trying to explain to Plaintiff why he felt he had to arrest him.[7] Additionally, he shows leniency towards Plaintiff when he chose to reduce the charges. He said, "I don't

---

[7] He begins by explaining why he pulled over the car, why he began the investigation, and then why he asked Plaintiff not to light the cigarette. Dkt. No. [29-5] Ex. A: DVR 031 at 3:12:31-3:12-58.

want to take you to jail. Ok? I'd rather write you a ticket and let you go home—come to court later on." Dkt. No. [29-5] Ex. A: DVR 031 at 3:14:05-3:14:11. These facts further demonstrate that Caldwell arrested Plaintiff because he believed he had probable cause, not because he was angry or wanted to harm Plaintiff. For that reason, the Court must grant summary judgment as to Plaintiff's state law false imprisonment claim.

### iv. Respondeat Superior

Because the Court has granted summary judgment for Plaintiff's state law claim, and Plaintiff is only bringing *respondeat superior* against the city on the state law claim, it is also subject to summary judgment in favor of Defendants. Dkt. No. [40] at 25.

### v.  Punitive Damages

Plaintiff also pleads for punitive damages. Dkt. No.[1] at 11. In particular, he asserts that the "misconduct of Defendant Caldwell rose to such a level of bad faith, willfulness, and reckless disregard for the consequences as to authorize the imposition of punitive damages against him." Id.

Plaintiff can only receive punitive damages under § 1983 if he shows Caldwell's conduct was "motivated by evil motive or intent, or [that] it involve[d] reckless or callous indifference to federally-protected rights. Smith v. Wade, 461 U.S. 30, 56 (1983). While a plaintiff can try to allege facts that show evil motive or intent, he need not meet such a high burden and can, instead, allege facts that meet the threshold standard of reckless disregard. Id.

26

In the context of a § 1983 claim, the standard for reckless disregard is a deliberate indifference to a civilian's rights. <u>Farmer v. Brennan</u>, 511 U.S. 825, 836 (1970). Plaintiff's theory of the case, where Caldwell arrested Plaintiff without even arguable probable cause, creates a question of fact for the jury to decide if it reaches the level of deliberate indifference.[8] For that reason, the Court will not grant summary judgment as to Plaintiff's request for punitive damages

## IV.   CONCLUSION

In accordance with the foregoing, Plaintiff's Motion to Amend Complaint [36] is **GRANTED** and Defendants' Motion for Summary Judgment [29] is **GRANTED IN PART** as to Plaintiff's state law false imprisonment claim, and *respondeat superior*, and **DENIED IN PART** as to all § 1983 claims and punitive damages.

**IT IS SO ORDERED** this 29th day of September, 2015.

LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE

---

[8] The Court emphasizes that the standard for reckless disregard for a § 1983 claim is lower than the standard for actual malice in a state law claim. <u>Compare</u> <u>Selvy v. Morrison</u>, 665 S.E.2d at 404-05 (holding actual malice requires a deliberate intention to do wrong), <u>with</u> <u>Farmer</u>, 511 U.S. at 836 (holding that the reckless disregard standard is "somewhere between the poles of negligence at one end and purpose or knowledge at the other."). Therefore, Plaintiff can meet the reckless disregard standard for punitive damages without overcoming the actual malice requirement in his state law claims.